1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10   CHOU YANG,

11              Plaintiff,                    No. 2:11-cv-0654 GGH (TEMP)

12        vs.

13   MICHAEL J. ASTRUE,                       ORDER
     Commissioner of Social Security,
14
                Defendant.
15   _____/

16              Plaintiff seeks judicial review of a final decision of the Commissioner of Social

17   Security ("Commissioner") denying her application for Supplemental Security Income ("SSI")

18   under Title XVI of the Social Security Act ("Act").  For the reasons that follow, Plaintiff's

19   Motion for Summary Judgment is DENIED, the Commissioner's Cross Motion for Summary

20   Judgment is GRANTED, and the Clerk is directed to enter judgment for the Commissioner.

21   BACKGROUND

22              Plaintiff, born July 15, 1966, applied on December 31, 2007 for Supplemental

23   Security Income disability benefits, alleging disability beginning August 22, 2004.  (Tr. at 96-

24   116.)  Plaintiff alleged she was unable to work due to pain from spine, shoulder, and back

25   injuries.  In a later disability report, plaintiff also reported problems with depression and high

26   blood pressure.  (Tr. at 128.)  In a decision dated July 23, 2010, ALJ L. Kalei Fong determined

1

that plaintiff was not disabled.  (Tr. at 8-15.)   The ALJ made the following findings (citations to

CFR omitted):[1]

> 1. The claimant has not engaged in substantial gainful activity since December 31, 2007, the application date.
>
> 2. The claimant has the following severe impairments:  left shoulder clavicular fracture and left hip pain and tenderness.
>
> 3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> 4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c) except occasional lifting overhead with

---

[1]  Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq.   Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq.  Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A parallel five-step sequential evaluation governs eligibility for benefits under both programs.  See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987).  The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
>
> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
>
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
>
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
>
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).
       The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

1    left upper extremity.

2    5.    The claimant is capable of performing past relevant work as
           a care provider.  This work does not require the
3          performance of work-related activities precluded by the
           claimant's residual functional capacity.
4
     6.    The claimant has not been under a disability, as defined in
5          the Social Security Act, since December 31, 2007, the date
           the application was filed.
6

7    (Tr. at 10-14.)

8    ISSUES PRESENTED

9           Plaintiff has raised the following issues:  A.  Whether the ALJ Committed Error at

10   Step Two by Finding Plaintiff's Depression Was Nonsevere; B.  Whether the ALJ Properly

11   Assessed Plaintiff's Residual Functional Capacity; C.  Whether the ALJ Improperly Discredited

12   Plaintiff's Testimony; and D.  Whether the ALJ Committed Error at Step Four in the Past Work

13   Finding.

14   LEGAL STANDARDS

15          The court reviews the Commissioner's decision to determine whether (1) it is

16   based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in

17   the record as a whole supports it.  Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).

18   Substantial evidence is more than a mere scintilla, but less than a preponderance.  Connett v.

19   Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted).  It means "such relevant evidence

20   as a reasonable mind might accept as adequate to support a conclusion."  Orn v. Astrue, 495 F.3d

21   625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).  "The

22   ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and

23   resolving ambiguities."  Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations

24   omitted).  "The court will uphold the ALJ's conclusion when the evidence is susceptible to more

25   than one rational interpretation."  Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

26   \\\\\

1    ANALYSIS

2        A. Step Two

3            Plaintiff contends that the ALJ erred in finding plaintiff's depression was not

4    severe at step two of the sequential evaluation.  At the second step of the disability analysis, an

5    impairment is not severe only if it "would have no more than a minimal effect on an individual's

6    ability to work, even if the individual's age, education, or work experience were specifically

7    considered."  SSR 85-28.  The purpose of step two is to identify claimants whose medical

8    impairment is so slight that it is unlikely they would be disabled even if age, education, and

9    experience were taken into account.  Bowen v. Yuckert, 482 U.S. 137, 107 S. Ct. 2287 (1987).

10   "The step-two inquiry is a de minimis screening device to dispose of groundless claims."

11   Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996).  At this step, the ALJ may decline to find

12   a severe impairment "*only* if the evidence establishes a slight abnormality that has no more than a

13   minimal effect on an individual's ability to work."  Webb v. Barnhart, 433 F.3d 683, 686-87 (9th

14   Cir. 2005) (emphasis in original).

15           In this case, the ALJ found plaintiff had severe impairments of left shoulder

16   clavicular fracture and left hip pain and thus proceeded with the rest of the sequential analysis.

17   (Tr. at 10-11.)  The ALJ did not find any mental impairments to be severe.  The record contains

18   *no* treatment records for any mental ailment; the sole evidence on the subject appears in a "one-

19   shot" mental examination performed as a consultative examination in the administrative process

20   in 2010.  (Tr. 168-170.)[2]  Despite her partial, tearful manifestation on the date of the

21   examination, nothing in that report indicates that the depression noted, with its rather

22   mild/moderate effects, was an affliction which had lasted 12 months, or would be expected to

23   last twelve months.  See Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012) specifying that at

24

25           [2] As noted by the consultative examiner, plaintiff had access to the county clinic.
     Although plaintiff reported that she had been prescribed medication for depression, medication
     which she had not procured, the mere prescription of medicine cannot in itself be found to reflect
26   a condition that has more than a minimal effect on one's ability to work.

1    the severe impairment stage, the impairment alleged must have lasted 12 months (or would be

2    expected to last twelve months).  Plaintiff cannot expect this one day finding to qualify as a

3    statement that plaintiff had a 12 month or more severe impairment.

4          Even if the ALJ erred in finding plaintiff's depression to be non-severe at step

5    two, such error was harmless.  See Curry v. Sullivan, 925 F.2d 1127, 1129 (9th Cir.1990)

6    (harmless error analysis applicable in judicial review of social security cases).  Moreover, the

7    ALJ properly found, based on the record, that plaintiff had only mild limitations in activities of

8    daily living, social functioning, and concentration, persistence and pace.  (Tr. at 11, 169-170.)

9    The ALJ expressly noted that the residual functional capacity assessment reflected the degree of

10   these mental limitations.  (Tr. at 11.)  See Hoopai v. Astrue, 499 F.3d 1071, 1077 (9th Cir. 2007)

11   (mild or moderate mental limitation is not sufficiently severe nonexertional limitation that

12   significantly limits ability to do work beyond exertional limitation).  There was no reversible

13   error committed at step two.

14        B.  Residual Functional Capacity

15          Plaintiff contends the ALJ failed to properly develop the record with respect to her

16   residual functional capacity.  Plaintiff asserts the ALJ should have obtained a more recent

17   physical exam based on a February 18, 2010 x-ray examination which revealed a grade III

18   acromioclavicular separation.  (Tr. at 181.)

19          Disability hearings are not adversarial.  Dixon v. Heckler, 811 F.2d 506, 510 (10th

20   Cir. 1987) (holding that ALJ has basic duty to "inform himself about facts relevant to his

21   decision") (quoting Heckler v. Campbell, 461 U.S. 458, 471 n.1 (1983) (Brennan, J.,

22   concurring)).  The ALJ must fully and fairly develop the record, and when a claimant is not

23   represented by counsel, an ALJ must be "especially diligent in exploring for all relevant facts."

24   \\\\\

25   \\\\\

26   \\\\\

1   Tonapetyan v. Halter, 242 F.3d 1144 (9th Cir. 2001).[3]   The duty also is heightened in the case of

2   a mentally ill claimant who may not be able to protect him or herself.  Id.

3           Evidence raising an issue requiring the ALJ to investigate further depends on the

4   case.  Generally, there must be some objective evidence suggesting a condition which could have

5   a material impact on the disability decision.  See Smolen v. Chater, 80 F.3d 1273, 1288 (9th

6   Cir.1996); Wainwright v. Secretary of Health and Human Services, 939 F.2d 680, 682 (9th

7   Cir.1991).  "Ambiguous evidence . . . triggers the ALJ's duty to 'conduct an appropriate

8   inquiry.'"  Tonapetyan, 242 F.3d at 1150 (quoting Smolen, 80 F.3d at 1288.)  The ALJ's decision

9   may be set aside due to his failure to develop the record if the claimant can demonstrate prejudice

10  or unfairness as a result of said failure.  Vidal v. Harris, 637 F.2d 710, 713 (9th Cir. 1991).  Thus,

11  the Ninth Circuit places the burden of proving prejudice or unfairness on the claimant.

12          The ALJ can develop the record by (1) making a reasonable attempt to obtain

13  medical evidence from the claimant's treating sources, (2) ordering a consultative examination

14  when the medical evidence is incomplete or unclear and undermines ability to resolve the

15  disability issue; (3) subpoenaing or submitting questions to the claimant's physicians; (4)

16  continuing the hearing; or (5) keeping the record open for supplementation.  See Tonapetyan, 242

17  F.3d. at 1150; 20 C.F.R. 404.1517, 416.917; 42 U.S.C. § 423(d)(5)(A), (B).  Ordering a

18  consultative examination ordinarily is discretionary, see Wren v. Sullivan, 925 F.2d 123, 128

19  (5th Cir.1991); Jones v. Bowen, 829 F.2d 524, 526 (5th Cir.1987), and is required only when

20  necessary to resolve the disability issue.  See Reeves v. Heckler, 734 F.2d 519, 522 (11th

21  Cir.1984); Turner v. Califano, 563 F.2d 669, 671 (5th Cir.1977).

22          Plaintiff alleged an onset of disability beginning August 22, 2004.  Plaintiff

23  provided no medical records at the time of her disability application or in supplemental disability

24  reports and attempts by the state agency to obtain records referenced in plaintiff's application

25

26          [3]  See also Crane v. Shalala, 76 F.3d 251, 255 (9th Cir.1996) (ALJ has duty to develop the
    record even when claimant is represented).

were unavailing.  (Tr. at 99, 104-105, 117, 120 125, 129, 136-140, 154.)  The entirety of the

medical records submitted by counsel in support of plaintiff's claim are one page of notes from

an initial examination by Hung Hoang, M.D., dated January 7, 2010, and six pages of records

from Primary Care Center dated February 18, 2010 to April 13, 2010.  (Tr. at 165, 176-181.)  No

further records were submitted by counsel despite being afforded an opportunity to do so by the

ALJ.  (Tr. at 42, 45.)  Consultative physical and mental examinations were ordered for plaintiff

and she underwent a comprehensive evaluation on August 1, 2008 by a physical medicine and

rehabilitation specialist and a consultative mental evaluation on April 9, 2010 by a clinical

psychologist.  (Tr. at 141-145, 166-170).  Neither of the consultative examiners opined plaintiff

was disabled and the residual functional capacity assessed by the ALJ was consistent with the

limitations assessed by the examiners and the state agency physician.  (Id., see also Tr. at 11,

149-151, 171-173.)  Although plaintiff makes much of an x-ray report from 2010, plaintiff failed

to show up for an x-ray examination ordered at state agency expense in 2008, which is closer in

time to the alleged onset date.  (Tr. at 146-147).  In 2008, when examined by the physical

medicine specialist, although no x-ray results were available due to plaintiff failing to show up

for the x-ray examination, the examining doctor specifically focused the physical examination on

plaintiff's left shoulder.  Based on the clinical findings, the examining physician assessed

plaintiff with an ability to lift and carry 50 pounds occasionally and 25 pounds frequently, with

reaching using the left arm to be done on an occasional basis.  (Tr. at 145.)  Appropriate attempts

were made to obtain plaintiff's medical records, she was sent out for consultative examinations,

plaintiff failed to undergo x-ray examination, and the record was kept open after the hearing for

further submission of medical evidence.  Under these circumstances, the ALJ met his duty to

develop the record and there was no error in the assessment of plaintiff's residual functional

capacity, which is consistent with the assessed limitations in the record.

\\\\\

\\\\\

C. Credibility

Plaintiff further contends that the ALJ improperly discredited her testimony.  The ALJ determines whether a disability applicant is credible, and the court defers to the ALJ who used the proper process and provided proper reasons.  See, e.g., Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995).  If credibility is critical, the ALJ must make an explicit credibility finding.  Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990); Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be supported by "a specific, cogent reason for the disbelief").

In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors.  Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir. July 8, 2009); Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir.1991) (en banc).  The ALJ may not find subjective complaints incredible solely because objective medical evidence does not quantify them.  Bunnell at 345-46.  If the record contains objective medical evidence of an impairment reasonably expected to cause pain, the ALJ then considers the nature of the alleged symptoms, including aggravating factors, medication, treatment, and functional restrictions.  See Vasquez, 572 F.3d at 591.  The ALJ also may consider the applicant's: (1) reputation for truthfulness or prior inconsistent statements; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) daily activities.[4]  Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see generally SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-01; SSR 88-13.  Work records, physician and third party testimony about nature, severity, and effect of symptoms, and inconsistencies between testimony and conduct, may also be relevant.  Light v. Social Security Administration, 119 F.3d 789, 792

_____

[4]  Daily activities which consume a substantial part of an applicants day are relevant.  "This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability.  One does not need to be utterly incapacitated in order to be disabled."  Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001) (quotation and citation omitted).

1   (9th Cir. 1997).  The ALJ may rely, in part, on his or her own observations, see Quang Van Han

2   v. Bowen, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot substitute for medical diagnosis.

3   Marcia v. Sullivan, 900 F.2d 172, 177, n.6 (9th Cir. 1990).  Plaintiff is required to show only that

4   her impairment "could reasonably have caused some degree of the symptom."  Vasquez, 572

5   F.3d at 591 (quoting Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007), Smolen, 80

6   F.3d at 1282).  Absent affirmative evidence demonstrating malingering, the reasons for rejecting

7   applicant testimony must be specific, clear and convincing.  Vasquez, 572 F.3d at 591.

8           In assessing plaintiff's credibility, the ALJ noted the inconsistencies between

9   plaintiff's testimony and the observations of the examining physician who noted plaintiff was

10   able to stand comfortably throughout the interview, with distraction was able to hop onto the

11   exam table despite reporting difficulty doing so, had exaggerated tenderness with the lightest

12   amount of touch, and was observed having less antalgia when walking outside the office as

13   opposed to in the exam room.  (Tr. at 13, 142-143.)  The observations of the examining physician

14   suggest malingering on the part of plaintiff.  The ALJ also correctly noted that plaintiff had very

15   minimal treatment records despite her claims of disabling pain.  (Tr. at 13.)  While plaintiff

16   argues her lack of treatment was due to lack of funds or insurance, she also testified that her

17   brother would give her $100 every two months to see the doctor and that she had seen the doctor

18   in October 2009.  (Tr. at 31.)  Yet these records were never provided and plaintiff failed to

19   explain why she had not sought any kind of treatment prior to 2010 for a condition that was

20   allegedly disabling since 2004.  The ALJ also factored into the credibility analysis the lack of

21   referrals for pain clinics or physical therapy.  While plaintiff is correct that there was a single

22   referral for physical therapy in April, 2010 (Tr. at 176), this belated, one-time referral does not

23   undermine the validity of the ALJ's observation that there were no referrals for management of

24   an allegedly disabling painful condition over a six year time span.  Plaintiff's credibility was

25   properly questioned for the reasons pointed out by the ALJ.

26   \\\\\

1    D.  Past Relevant Work

2           Finally, plaintiff contends the ALJ committed error by not taking the testimony of

3    a vocational expert.  The ALJ found at step four of the sequential analysis that plaintiff could

4    perform her past relevant work as a caregiver.  (Tr. at 13.)  "Although the burden of proof lies

5    with the claimant at step four, the ALJ still has a duty to make the requisite factual findings to

6    support his conclusion.  S.S.R. 82-62.  See 20 C.F.R. §§ 404.1571 and 416.971, 404.1574 and

7    416.974, 404.1565 and 416.965."  Pinto v. Massanari, 249 F.3d 840, 844 (9th Cir. 2001).  "This

8    is done by looking at the 'residual functional capacity and the physical and mental demands' of

9    the claimant's past relevant work.  20 C.F.R. §§ 404.1520(e) and 416.920(e)."  Pinto, 249 F.3d at

10   844-45.  The claimant must be able to perform: (1) the actual functional demands and job duties

11   of a particular past relevant job; or (2) the functional demands and job duties of the occupation as

12   generally required by employers throughout the national economy.  Id. at 845 (citing S.S.R.

13   82-61).  "This requires specific findings as to the claimant's residual functional capacity, the

14   physical and mental demands of the past relevant work, and the relation of the residual functional

15   capacity to the past work."  Id. (citing S.S.R. 82-62).

16          "Social Security Regulations name two sources of information that may be used to

17   define a claimant's past relevant work as actually performed: a properly completed vocational

18   report, S.S.R. 82-61, and the claimant's own testimony, S.S.R. 82-41."  Id.  "[T]he best source

19   for how a job is generally performed is usually the Dictionary of Occupational Titles."  Id. at

20   845-46 (citing Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995) and 20 C.F.R. §§

21   404.1566(d) and 416.966(d)).

22          Plaintiff reported in a disability report that she had previously worked for five

23   years at 8 hours per day, 5 days a week as a babysitter, which involved walking two hours,

24   standing three hours and sitting two hours a day, lifting and carrying children from room to room

25   and lifting a maximum of  20 pounds with frequent lifting of 10 pounds.  (Tr. at 102-103.)  Such

26   work is well within the residual functional capacity properly assessed by the ALJ.  Moreover, the

1 record contains a vocational profile which notes plaintiff's past relevant work as a baby sitter was

2 within plaintiff's residual functional capacity.  (Tr. at 48.)  Under these circumstances, the ALJ

3 correctly found plaintiff could perform her past relevant work and there was no error in not

4 consulting a vocational expert.

5 CONCLUSION

6       For the reasons stated herein, IT IS HEREBY ORDERED that:

7       1.  Plaintiff's Motion for Summary Judgment (dkt. no. 16) is denied;

8       2.  The Commissioner's Cross Motion for Summary Judgment (dkt. no. 17) is

9 granted; and

10       3.  Judgment is entered for the Commissioner.

11 DATED: June 6, 2012

12              /s/ Gregory G. Hollows
           UNITED STATES MAGISTRATE JUDGE

13

14 JMM
yang.temp.ss

15

16

17

18

19

20

21

22

23

24

25

26

11